UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUIDIVILLE RANCHERIA OF CALIFORNIA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ALAN GINSBURG, et al.,<br><br>　　　　　Defendants. | Case No.  26-cv-01578-AGT<br><br>**ORDER ON PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 12 |

Plaintiff Guidiville Rancheria of California (the Tribe, or Guidiville) seeks a preliminary injunction against defendants Alan Ginsburg; AHG Group, LLC; and Bluerock Real Estate Holdings, LLC's (collectively, Defendants) arbitration demand. Dkt. 12. Defendants oppose. Dkt. 15. Having reviewed the papers and after hearing oral argument, the Court now grants in part and denies in part the preliminary injunction, for the reasons that follow.

## I.    Background

This dispute is long-running and has many players. Below, the Court reviews only the relevant portions of the backstory.

### A.  2006 Letter Agreement

It is undisputed that the Tribe entered into a letter agreement on November 9, 2006 (the 2006 Letter Agreement). Dkt. 12-4 at 11–18.[1] *See also* dkt. 12 (motion) at 9–10; dkt. 15

---

[1] References to page numbers correspond to the ECF page number at the top of each docketed page.

(opposition) at 8. The 2006 Letter Agreement was signed by the Tribe; Upstream Point Molate, LLC (Upstream); and the Scotts Valley Band of Pomo Indians (Scotts Valley).[2] Dkt. 12-4 at 11. Relevant here, the Tribe and Upstream waived the application of an exclusivity provision with respect to a proposed development on a parcel of land. *Id.* Scotts Valley then agreed to loan to the Tribe and Upstream, jointly, $6.5 million. *Id.* In return, the Tribe and Upstream agreed to execute and deliver into escrow promissory notes evidencing their obligations to repay the loans (subject to certain conditions not relevant for this dispute). *Id.* at 13.

Paragraph 10 reads in pertinent part: "Each of Guidiville and Scott's [*(sic)*] Valley expressly and irrevocably waives its sovereign immunity from suit by the respective parties to this agreement for the express limited purpose of compelling arbitration as provided below (including the promissory notes) and consents to be sued" first in the tribal courts of either the Tribe or Scotts Valley. *Id.* If not in the tribal courts, then in United States District Court with appeal to the Ninth Circuit and United States Supreme Court "for the expressly limited purpose of compelling arbitration and enforcing any arbitration award of judgment arising out of this agreement." *Id.* at 15. If not in the federal courts, then "the parties consent to be sued in the California State Court system or any other court of competent jurisdiction for the expressly limited purpose describe in the arbitration provisions below." *Id.*

Paragraph 11 requires in relevant part that, "[a]ll disputes, controversies or claims by or between parties to this agreement (but specifically excluding third parties) arising out of or relating to this agreement, and/or any agreement collateral thereto, including, the promissory notes referred to above, shall be settled by binding arbitration in accordance with" the

---

[2] Upstream and Scotts Valley are not parties to this lawsuit.

American Arbitration Association's (AAA) rules and the Federal Arbitration Act (FAA). *Id.*

### B. 2025 Demand for Arbitration

On November 12, 2025, Defendants filed a Demand for Arbitration with AAA. Dkt. 12-4 at 2–9. The Tribe objected to arbitration on December 3 and December 29, 2025. Dkts. 12-7 &12-9. AAA determined that it would proceed with arbitration on January 7, 2026. Dkt. 12-11.

### C. 2026 Request for Preliminary Injunction

On February 23, 2026, the Tribe filed the present suit. *See* dkt. 1. On March 10, 2026, the Tribe moved to enjoin Defendants' arbitration demand. Dkt. 12.[3] Defendants oppose the request for a preliminary injunction. Dkt. 15.

## II. Legal Standard

Preliminary relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Id.* at 20.

### A. The Tribe Is Likely to Succeed on the Merits

The Tribe argues that the Court must resolve threshold issues: whether AAA can decide arbitrability and whether the Tribe waived sovereign immunity to arbitrate the claims asserted here. Dkt. 12 at 8.

---

[3] According to the Tribe, the parties met and conferred after the complaint was filed in this case. Dkt. 12 at 8 n.1. Defendants agreed to hold the arbitration in abeyance during these proceedings and the Tribe refrained from seeking a temporary restraining order. *Id.*

### 1. The Tribe Didn't Agree to Arbitrate Arbitrability

"[P]arties can form multiple levels of agreements concerning arbitration." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024). Indeed, parties can "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). "When deciding whether the parties agreed to arbitrate" arbitrability, a court "appl[ies] ordinary state-law principles" of contract formation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). But courts do "not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* (cleaned up).

Defendants argue that the Tribe agreed to arbitrate arbitrability by pointing to the 2006 Letter Agreement. Dkt. 15 at 11. Paragraph 11 delegates all disputes to an arbitration conducted in accordance with AAA's rules and the FAA. *Id.* at 11–12. Defendants argue that, in the Ninth Circuit, inclusion of the AAA rules constitutes sufficient evidence that the parties agreed to arbitrate arbitrability. *Id.*

But Defendants' argument cannot get around Paragraph 10 of the 2006 Letter Agreement, which addresses tribal immunity and lays out an order of operations for compelling arbitration. First, the dispute is to go the specified tribal courts, then to the United States District Court, then to the California State Court system or any other court of competent jurisdiction. Dkt. 12-4 at 14–15. If the parties had agreed to arbitrate all issues of arbitrability in Paragraph 11, the Tribe's Paragraph 10 waiver of immunity in specific court systems — for the purpose of compelling arbitration — would be pointless. The Court is not inclined to give Paragraph 11 such weight.

Defendants' authority supports this conclusion. Defendants lean on *Capelli*

*Enterprises, Inc. v. Fantastic Sams Salons Corporation*, wherein the court found that incorporation of the AAA rules supported a delegation of arbitrability to the arbitrator. No. 16-CV-03401-EJD, 2016 WL 4492588, at *4 (N.D. Cal. Aug. 26, 2016). In *Capelli*, the opposing party argued that a contradictory provision in the agreement undermined the delegation. *Id.* at *5–6. The court found, however, that the highlighted provision was not inconsistent with a delegation of arbitrability to the arbitrator. *Id.*

Here, Paragraph 10 is a waiver of sovereign immunity "for the express limited purpose of compelling arbitration as provided below (including the promissory notes)." Dkt. 12-4 at 14. Arbitration is first to be compelled in a tribal court, then federal district court, then state court or other competent court. *Id.* at 14–15. That detailed order of operations regarding waiver of sovereign immunity does not include an arbitrator. It is furthermore inconsistent with a delegation of all arbitrability issues, unlike in *Capelli,* which did not discuss sovereign immunity.

In light of Paragraph 10, there is not "clear and unmistakable evidence" that the Tribe agreed to arbitrate arbitrability. *See First Options*, 514 U.S. at 944. Instead, the Court must decide.

## 2.  The Tribe Didn't Agree to Arbitrate Waiver of Sovereign Immunity

The Tribe asserts that the waiver of sovereign immunity is for the Court to decide. Dkt. 12. Defendants argue that this issue can go to the arbitrator because there is a delegation clause, pointing again to Paragraph 11 of the 2006 Letter Agreement. Dkt. 15 at 13–14.

In *Caremark, LLC v. Chickasaw Nation*, the Ninth Circuit concluded that first, "a court must resolve any challenge that an agreement to arbitrate was never formed, even in

the presence of a delegation clause. Next, a court must also resolve any challenge directed specifically to the enforceability of the delegation clause before compelling arbitration of any remaining gateway issues of arbitrability." 43 F.4th 1021, 1030 (9th Cir. 2022). Applying these principles, the Circuit found that the Chickasaw Nation had validly formed contracts with delegation clauses. *Id.* at 1031. The Circuit therefore affirmed the district court's order compelling arbitration, even where the Chickasaw Nation asserted that it never waived sovereign immunity. *Id.* at 1033–34. Because there was a valid delegation clause, the Circuit specifically did "not decide . . . whether the [Chickasaw] Nation has waived its sovereign immunity with respect to any counterclaims that [the plaintiff] might assert against the Nation in arbitration." *Id.* at 1034.

In light of *Chickasaw Nation*, the Tribe has the better argument. As found above, the Court is not persuaded that the Tribe agreed to a clear and unmistakable delegation clause permitting the arbitrator to decide all issues of arbitrability. As such, threshold issues regarding arbitration, including waiver of immunity, remain with the Court to decide.

At the hearing, Defendants cited to *Caremark, LLC v. Choctaw Nation* in support of their position that the Tribe agreed to arbitrate sovereign immunity by selecting arbitration as a venue. Oral Argument at 21:08–14;[4] 104 F.4th 81 (9th Cir. 2024). Decided two years after *Chickasaw*, in *Choctaw* the Ninth Circuit "decide[d] the issue that [it] did not reach in *Chickasaw*: whether the Choctaw Nation waived its sovereign immunity to suit in the District of Arizona to compel arbitration." 104 F.4th at 88. The Circuit found (1) that there was a valid contract and (2) that the Choctaw Nation "clearly and unambiguously waive[d its]

---

[4] Citations to argument in this order refer to time stamps from the audio recording of the Court's April 24, 2026, hearing. Upon request, the Court can provide access to the recording. Any such requests should be filed on the Court's docket.

sovereign immunity from arbitration proceedings in the District of Arizona." *Id.* at 89 & 94.

This case is distinguishable. In *Choctaw*, along with incorporation of the AAA rules, there was a clear and unmistakable delegation clause: "The arbitrator(s) shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of the agreement to arbitrate, including but not limited to, any claim that all or part of the agreement to arbitrate is void or voidable for any reason." *Id.* at 84. There is no such delegation clause here: Paragraph 11 does not mention validity or application, for example. *Cf. Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (finding that a provision delegating "enforceability, revocability or validity" clearly and unmistakably showed that the parties intended the arbitrator to decide threshold issues); *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (concluding that an agreement to arbitrate disputes as to the "validity or application of any of the provisions" "clearly and unmistakably indicate[d] their intent for the arbitrators to decide the threshold question of arbitrability"). *Choctaw* also did not feature a clause limiting the tribe's waiver, as is found here in Paragraph 10. Instead, Defendants argue that *Choctaw* supports a finding of delegation here based on a selection of arbitration as the venue. *See, e.g.*, Oral Argument at 19:12–44. But that is not what the Circuit found in *Choctaw*.[5]

---

[5] Defendants additionally raise *Unite Here Local 30 v. Sycuan Band of the Kumeyaay Nation* at the hearing. Oral Argument at 21:14–37; 35 F.4th 695 (9th Cir. 2022). There, the Ninth Circuit affirmed a district court's order granting judgment on the pleadings and sending the remaining disputes to an arbitrator. 35 F.4th at 700. But at neither the trial nor appellate level did the parties dispute the delegation of arbitrability or sovereign immunity. *See* No. 20-CV-01006, 2020 WL 7260672 (S.D. Cal. Dec. 10, 2020), *aff'd*, 35 F.4th 695 (9th Cir. 2022) & 35 F.4th 695 (9th Cir. 2022). The defendant tribe did argue that it did not waive its sovereign immunity for the plaintiff or the claims alleged. *Unite Here*, 35 F.4th at 700. But that is a merits related question, different than the threshold question disputed here. As such, *Unite Here* is inapposite.

Therefore, the Tribe did not agree to arbitrate waiver of sovereign immunity.[6]

### B.  The Tribe Shows a Likelihood of Irreparable Harm Without Pre-liminary Relief

It is uncontested that AAA will proceed with the arbitration absent agreement of the parties or a court order. Dkt. 12 at 15; dkt. 15 at 11. Forcing the Tribe to arbitrate — without the Tribe's consent to arbitration — will cause irreparable harm. *See Ingram Micro Inc. v. Signeo Int'l, Ltd.*, No. CV 13-1934, 2014 WL 3721197, at *4 (C.D. Cal. July 22, 2014) ("Forcing a party to submit to arbitration, when it did not agree to do so, constitutes per se irreparable harm.").

Defendants argue that the Tribe will only be forced to arbitrate arbitrability before AAA if this motion is denied. Dkt. 15 at 20. But the Court has found that the Tribe didn't agree to arbitrate threshold issues, so it would still be arbitrating without its consent. And if AAA finds the disputes are arbitrable, then the Tribe will likely be arbitrating the merits.

The Tribe argues, and Defendants don't refute, that irreparable harm from a forced arbitration is especially likely where sovereign immunity is at issue. Dkt. 12 at 22–23; dkt. 20 at 17–18. *See also Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Utah*, 790 F.3d 1000, 1005 (10th Cir. 2015) ("[A]n invasion of tribal sovereignty can constitute irreparable in-jury.") (cleaned up).

### C.  The Balance of Equities Tips in Favor of the Tribe

The Tribe argues that the Tribe faces a deprivation of its sovereign immunity, while Defendants risk only a delay if the preliminary injunction is granted. Dkt. 12 at 23.

---

[6] Having decided that the Tribe did not agree to arbitration of the threshold issues, at this time, the Court need not adjudicate the parties' merits-based arguments to find that the Tribe is likely to succeed in its bid to halt the AAA arbitration.

Defendants first argue that it is not inequitable to force the Tribe to abide by a signed delegation clause. Dkt. 15 at 21. As noted above, the Court concludes that there is no operable delegation clause here.

Second, Defendants contend that they may be denied a forum for their claims if this motion is granted. *Id.* However, as discussed at the hearing, Defendants could litigate their claims in this Court. Oral Argument at 47:50–55:10.

On these facts, the balance of the equities favors the Tribe.

### D.  An Injunction Is in the Public Interest

The Tribe argues that an injunction is in the public interest. The public interest favors respect for tribal sovereignty and upholding limitations to consent. Dkt. 12 at 24. Defendants respond only that arbitration serves the public interest, without explaining why, as does holding parties to their agreements. Dkt. 15 at 21. The Court did not find that the Tribe agreed to arbitration here, so Defendants' arguments are not convincing. Nor does the Court believe that arbitration, when unconsented to, is in the public interest.

Given the above, the Tribe has shown that it is entitled to preliminary injunctive relief. *See Winter*, 555 U.S. at 22.

### III.    Defendants' Evidentiary Objections Are Overruled

Defendants object to the Declarations of Donald Duncan and David Galarza. Dkt. 15-2. The Tribe opposes. Dkt. 20 at 19.

Objections to ¶ 4, ¶ 5, ¶ 6, ¶ 7, ¶ 9, ¶ 10, and ¶ 12 of the Duncan declaration are denied as moot: the Court did not rely on these statements in its order.

The Court reviewed Defendants' objections to ¶ 11 of the Duncan declaration. Paragraph 11 authenticates a copy of the 2006 Letter Agreement. The Court relies on the attached

version of the 2006 Letter Agreement. Defendants don't argue, however, that the 2006 Letter Agreement is invalid or that the copy attached is fraudulent. As such, and given that the Court doesn't otherwise rely on the declarations in ¶ 11, this objection is also denied.

Similarly, Defendants' objections to ¶ 4, ¶ 8, ¶ 9, ¶ 10, ¶ 11, and ¶ 12 of the Galarza declaration are denied as moot because the Court did not rely upon these statements.

Paragraph 7 of the Galarza declaration authenticates the 2006 Letter Agreement. Again, the Court relies on this material. Defendants don't argue that the filed copy is fraudulent or otherwise invalid. As such, the objection to ¶ 7 is denied. The Court doesn't otherwise rely upon any challenged statements.[7]

## IV.    Conclusion

For the reasons stated, the Tribe's request for a preliminary injunction is granted in part. Defendants, their officers, agents, servants, employees, and attorneys, as well as all persons who are in active concert with them, are hereby preliminarily enjoined and restrained from prosecuting or otherwise taking any action to advance the subject arbitration currently pending before AAA, No. 01-25-0005-6716, pending a final determination on the threshold issues of arbitrability and sovereign immunity. Further, the Court waives any requirement that the Tribe post a bond in this matter.

/ / /

/ / /

/ / /

---

[7] At the hearing, the Tribe agreed that the testimony serves to authenticate the documents, for the most part. Oral Argument at 2:30–3:47. The Court invited the parties to highlight any areas where the parties believed the Court needed to rely on challenged statements. *Id.* at 3:45–4:39. Neither party identified any such areas during the hearing.

The Tribe's request for an injunction pending a final determination on the merits of the Tribe's claims in this action is denied. The Court here decided only threshold issues regarding where arbitrability should be considered.

**IT IS SO ORDERED.**

Dated: May 5, 2026

_____
Alex G. Tse
United States Magistrate Judge